```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                    MIDDLE DISTRICT OF PENNSYLVANIA


THEODORE L. KING,                  :
                                   :
          Petitioner               :
                                   :
     v.                            :    CIVIL NO. 3:CV-04-1119
                                   :
PENNSYLVANIA BOARD OF              :    (Judge Conaboy)
PROBATION AND PAROLE,              :
                                   :
          Respondent               :
```

## MEMORANDUM AND ORDER
## Background

Theodore L. King, an inmate presently confined at the State Correctional Institution, Huntingdon, Pennsylvania, filed this pro se petition for writ of habeas corpus. Named as sole Respondent is the Pennsylvania Board of Probation and Parole ("Parole Board"). Service of the petition was previously ordered.

Petitioner was convicted of murder, aggravated assault and possession of an instrument of crime in the Philadelphia County Court of Common Pleas. On June 10, 1980, he was sentenced to a fifteen (15) to thirty (30) year term of incarceration. His minimum sentence expired on February 9, 1995. The Petitioner's

1

maximum sentence will not expire until February 9, 2010.[1] Since 1995, King has been denied parole eight (8) times. Specifically, the Parole Board denied relief on April 4, 1995, July 1, 1996, August 13, 1997, June 23, 1998, June 18, 1999, December 28, 2000, September 27, 2002, and November 5, 2003.

King claims entitlement to federal habeas corpus relief on the grounds that the Parole Board violated due process by basing its denials of parole on the undefined standard "that the fair administration of justice cannot be achieved through your release." Id. at ¶ 8. Petitioner adds that the Respondent's denial of parole following Pennsylvania's 1996 amendments to the parole statute, "violated Petitioner's Constitutional right(s) under the Ex Post Facto Clause." Doc. 1, p. 1.

King is also apparently arguing that the Parole Board's written decisions failed to satisfy the requirements of due process because they did not provide a brief statement of the reasons for the denial of parole. Petitioner additionally indicates that his claims were previously raised in an unsuccessful petition for writ of mandamus before the Commonwealth Court of Pennsylvania and that it would be futile

---

[1] Under Pennsylvania state law, the criminal sentence imposed is a prisoner's maximum sentence. A prisoner's minimum sentence is simply the date upon which he or she becomes eligible for parole. See Gundy v. Parole Board, 478 A.2d 139, 141 (Pa. Cmwlth. 1984)

to seek relief from the Pennsylvania Supreme Court.

Respondent argues that King is not entitled to habeas corpus relief because: (1) he failed to exhaust state court remedies; and (2) the most recent denial of parole did not violate the Ex Post Facto Clause.  This matter is ripe for consideration.

## **Discussion**
## I.      **Exhaustion**

As a threshold matter, a habeas petitioner must either show that the federal constitutional claims asserted in the federal habeas petition have been "fairly presented" to the state courts, or that there is an absence of available state court corrective process, or that circumstances exist rendering the available state court process ineffective to protect the petitioner's rights.  See 28 U.S.C. § 2254(b).[2]

King, citing Finnegan v. Bd. of Prob. & Parole, 576 Pa. 59, 838 A.2d 684 (2003), argues that exhaustion of his state

---

[2] Section 2254(b)(1) of title 28 U.S.C. provides:

> (b)(1) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that --
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

3

court remedies would have been futile in light of prior adverse decisions by the Pennsylvania Supreme Court.

Since the filing of this action and submission of the response there have been important federal and state case law developments in the area of when, and if, a Pennsylvania state prisoner must seek state court review of a denial of parole. Specifically, in January of 2005, the Third Circuit Court of Appeals in Defoy v. McCullough, 393 F3d 439, 445 (3d Cir. 2005), held that a state prisoner challenging the denial of parole on constitutional grounds, other than for a violation of the Ex Post Facto Clause, was not required to exhaust state court remedies before pursuing federal habeas review.  Almost exactly one month later, the Pennsylvania Supreme Court decided Cimaszewski v. Bd. of Prob. & Parole, 582 Pa. 27, 868 A.2d 416, 427 (2005), which expressly overruled Finnegan, to the extent that the Pennsylvania Supreme Court now recognizes that an ex post facto claim may arise from the application of the 1996 amendments to an applicant convicted prior to the enactment of the amendments who can show that they create "a significant risk of prolonging his incarceration."  These recent case developments support the Respondent's contention that exhaustion should not be excused.  However, as King filed his petition several months prior to Defoy and Cimaszewski, and given the "considerable jurisprudential confusion" at the time surrounding this issue, it is unreasonable to expect that he could have

4

predicted the Pennsylvania Supreme Court's decision. <u>Defoy v. McCullough</u>, 393 F.3d 439, 446 (3d Cir. 2005)(Weis, J., concurring). Nonetheless, the question of exhaustion need not be resolved as the claims presented by King are clearly without merit.[3] <u>See</u> 28 U.S.C. § 2254(b)(2)(a federal court can deny a habeas petition "on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

**II.      Standard of Review**

28 U.S.C. § 2254(d)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; . . . .

"The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state

---

[3] Recently, the Supreme Curt ruled that an ex post facto claim of the nature presented here may be pursued in an action under 42 U.S.C. § 1983. <u>Wilkinson v. Dotson</u>, ___ U.S. ___, 125 S. Ct. 1242 (2005). There is no need to exhaust state court remedies before filing a § 1983 action. Although Justice Scalia, in a concurring opinion in which Justice Thomas joined, suggested that habeas corpus would not be available to pursue such a claim, the majority ruling did not resolve this issue. Whether habeas corpus relief is or is not available with respect to the claims advanced by King is not presently before this Court. In any event, the issue is academic because the underlying claims lack merit whether brought in habeas or under § 1983.

5

prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002).  Specifically, when a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).  <u>See</u> <u>generally</u>, <u>Gattis v. Snyder</u>, 278 F.3d 222, 234 (3d Cir. 2002); <u>Moore v. Morton</u>, 255 F.3d 95, 104-05 (3d Cir. 2001).  The Court has held that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning.  <u>Williams v. Taylor</u>, 529 U.S. 362, 404-405 (2000).  As explained in <u>Bell</u>, 535 U.S. at 694:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. . . . The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. . . . The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable . . . . .

Resolution of factual issues by the state courts is presumed to be correct unless the petitioner presents clear and convincing

6

evidence to the contrary.  See 28 U.S.C. § 2254(e)(1).

In summary, the appropriate inquiry for federal district courts in reviewing the merits of § 2254 petitions is whether the state court decisions applied a rule different from the governing law set forth in United States Supreme Court cases, decided the case before them differently than the Supreme Court has done on a set of materially indistinguishable facts, or unreasonably applied Supreme Court governing principles to the facts of the particular case.  State court factual findings may be set aside only if rebutted by clear and convincing evidence. This Court will address King's claims in accordance with the above standards.

### III.      **Ex Post Facto**

Petitioner initially asserts that the denials of parole were premised on the undefined fair administration of justice standard and therefore did not comply with due process.  King explains that the Parole Board violated the Ex Post Facto Clause of the United States Constitution by applying the 1996 amendments to Pennsylvania's parole regulations in his case.

In December 1996, the Pennsylvania state legislature amended the law governing parole (61 Pa. Stat. § 331).  Under the modified criteria, protection of the safety of the public is the paramount condition which must be considered in determining parole eligibility.

A new law or policy violates the Ex Post Facto Clause of

7

the United States Constitution when it is applied to events which occurred prior to its enactment and disadvantages the offender affected by it. Weaver v. Graham, 450 U.S. 24, 29 (1981). The Ex Post Facto Clause applies to a statutory or policy change that "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." Mickens-Thomas v. Vaughn, 321 F.3d 374, 383 (3d Cir. 2003)("Mickens-Thomas I"), quoting, California Dept. of Corrections v. Morales, 514 U.S. 499, 506 n. 3 (1995). "One function of the *Ex Post Facto* Clause is to bar enactments, which by retroactive operation increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249 (2000). A retroactive application of a change in parole laws can constitute an ex post facto violation. See id. at 250.

As previously noted, in 1996 the Pennsylvania legislature amended its parole law by setting forth the public policy statement of the Commonwealth concerning parole. Specifically, the 1996 legislation decreed that "the board shall first and foremost seek to protect the safety of the public." 61 P.S. § 331.1 (Purdon's 1999).[4] The former § 331.1 made no mention of

---

[4] After amendment, section 331.1 reads in full:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of

(continued...)

8

pubic safety, and in fact declared the public policy of the Commonwealth to be that parole would be a period of rehabilitation of an inmate for his restoration to society.[5]

It is noted that the Petitioner was initially denied parole in April, 1995. His second unsuccessful parole review transpired in July, 1996. Both of those proceedings clearly transpired prior to the December, 1996 enactments and clearly cannot serve as a proper basis for his present ex post facto

---

[4](...continued)
appropriate offenders from prison.

In providing these benefits to the criminal justice system, the board shall first and foremost seek to protect the safety of the public. In addition to this goal, the board shall address input by crime victims and assist in the *fair administra- tion of justice* by ensuring the custody, control and treatment of paroled offenders.

61 P.S. § 331.1 (Purdon's 1999)(emphasis added).

[5] Formerly, section 331.1 read as follows:

The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

9

claim.

In Mickens-Thomas I, the Court of Appeals for the Third Circuit addressed the ex post facto ramifications of the 1996 parole amendments. The Third Circuit noted that the essential inquiry was "whether, in practice, the new language has altered the fundament for reviewing parole applications." Id. at 384 (emphasis added). It concluded that the 1996 amendments as applied to Mickens-Thomas constituted an Ex Post Facto Clause violation, noting that there was "significant evidence that [the Board] acted upon policies that were established after [the petitioner]'s crime and conviction." Id. at 393. The Third Circuit explained:

> [A] parole decision that fails to address any of the criteria mandated by Board policy, such as institutional recommendations, willingness to undergo counseling and educational achievement, and instead utterly ignores all factors counseling in favor of release, falls outside the realm of the legitimate exercise of discretion under the pre-1996 policies. Inference instructs us that the Board inappropriately relied on policies implemented in 1996, rather than the parole policies in place at the time of Thomas's crime and conviction.

Id. at 387.

The Court noted that "[t]he Board mistakenly construed the 1996 statutory change to signify a substantive change in its parole function." Id. However, the Third Circuit recognized that a

10

recent decision of the Pennsylvania Supreme Court, <u>Winklespecht v. Pa. Bd. of Prob. & Parole</u>, 571 Pa. 685, 813 A.2d 688 (2002), concluded that the amended § 331.1 did not require the Board to place the greatest weight on considerations of public safety. <u>Id</u>. Unfortunately, the <u>Winklespecht</u> decision was announced after the denial of parole to Mickens-Thomas.

With respect to Mickens-Thomas and other habeas applicants who were denied parole after adoption of the 1996 changes and before <u>Winklespecht</u> clarified the fact that the amendment did not change the administration of the policies, the appropriate remedy for an ex post facto violation has been to remand the matter to the Parole Board for reconsideration, applying the pre-1996 law.[6]  <u>See</u> <u>Hart v. Pa. Bd. of Prob. & Parole</u>, 82 fed. Appx. 276 (3d Cir. Nov. 23, 2003); <u>see</u> <u>also</u> <u>McLaurin v. Larkins</u>, 76 Fed. Appx. 415 (3d Cir. Sept. 18, 2003); <u>Hollawell v. Gillis</u>, 65 Fed. Appx. 809, 2003 WL 1919371, at *8 (3d Cir. April 23, 2003).

In cases where parole was denied after <u>Winklespecht</u>, habeas relief has been denied where it was evident that the denial of parole was based upon factors that would have resulted in the denial of parole under pre-1996 policies and practices.  <u>See</u> <u>Grob v. Pa. Bd. of Prob. & Parole</u>, Civil No. 3:CV-04-0275, slip

---

[6] Following remand in <u>Mickens-Thomas I</u>, the Board again denied parole. The Third Circuit found that the Board had exhibited "willful noncompliance, bad faith, and . . . vindictiveness" sufficient to direct the release of the petitioner. <u>Mickens-Thomas v. Vaughn</u>, 355 F.3d 294, 310 (3d Cir. 2004) ("<u>Mickens-Thomas II</u>").

op. at 6 (M.D. Pa. Oct. 29, 2004)(Nealon, J.); <u>Sphar v. Pa. Bd. of Probation & Parole</u>, Civil No. 3:CV-04-1145, slip op. at 7 (M.D. Pa. Oct. 29, 2004)(Munley, J.).

Recently, the Third Circuit stated that in order to obtain relief on an ex post facto claim, a Pennsylvania state prisoner must show "*both* a retroactive change in law or policy *and* that this change caused individual disadvantage" by increasing the risk of punishment. <u>Richardson v. Pennsylvania Parole Board</u>, 2005 WL 2155505 *1 (3d Cir. Sept. 8, 2005)(emphasis in original). In <u>Richardson</u>, the Court added that it was not sufficient for a prisoner to merely "show that the Board relied on a new law or policy." <u>Id</u>. at * 9. Rather, the inmate must show that he was personally disadvantaged.

The November 5, 2003 decision which denied parole to King clearly came after the Pennsylvania Supreme Court had decided <u>Winklespecht</u>. Based on a review of the record, it was not the Parole Board's application of harsher laws or guidelines that caused the denial of parole. As noted earlier, Petitioner was denied parole twice prior to the enactment of the 1996 amendments. The Parole Board's most recent decision also specifically enumerated legitimate reasons for denying parole that would have also warranted the denial of parole prior to the 1996 amendments.

Unlike <u>Mickens-Thomas I</u>, the Parole Board had the benefit of <u>Winklespecht</u> prior to conducting King's most recent parole

review. The Parole Board's latest written decision listed a series of significant reasons for denying King parole which stress, not public safety issues, but rather the Petitioner's own conduct and the Parole Board's perception of his suitability for release.

The November 5, 2003 decision noted that the Petitioner had been interviewed and a review of his file had taken place. See Doc. 11, Exhibit J. It clearly voiced dissatisfaction with King's version of the nature and circumstances of his underlying crimes. The written decision further indicated that reports, evaluations, and assessments regarding Petitioner's physical, mental, and behavior condition and history had been considered. Each of those matters are included in § 331.19 as factors to be considered in parole decisions.[7]

There is no indication that either public safety or the fair administration of justice were controlling factors in the latest decision to deny King parole. In light of his two

---

[7] § 331.19 provides in relevant part:

> It shall be the duty of the board . . . to consider the nature and circumstances of the offense committed, any recommendations made by the trial judge and prosecuting attorney, the general character and background of the prisoner. . . . The board shall further cause the conduct of the person while in prison and his physical, mental and behavior condition and history, . . . his complete criminal record, as far as the same may be known, to be reported and investigated.

13

earlier parole denials there is little doubt that Petitioner would have been denied parole regardless of the subsequent enactment of the 1996 amendments to the Parole Act.  As required under Richardson, King has not shown that he was personally disadvantaged by the use of the 1996 amendments.  Since a violation of the Ex Post Facto Clause has not been established, Petitioner's claim shall be dismissed.

King's remaining contention is that the Parole Board violated due process because it failed to provide him with a brief statement of the reasons for the decision to deny parole. As noted above, the Petitioner was clearly given a written meaningful statement of reasons for its action.  See Greene v. United States Parole Comm'n, 749 F. Supp. 650, 654 (M.D. Pa. 1990).  An appropriate Order will enter.

AND NOW, THEREFORE, THIS 19th DAY OF OCTOBER, 2005, IT IS HEREBY ORDERED THAT:

    1.    The petition for writ of habeas corpus is denied.

    2.    The Clerk of Court is directed to close the case.

    3.    Based on the Court's determination herein, there is no basis for the issuance of a certificate of appealability.

    S/Richard P. Conaboy
    RICHARD P. CONABOY
    United States District Judge